# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| BENNIE BLEVINS, | : | Case No. 1:19-cv-276 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| MSV RECOVERY LLC d/b/a "Upstate Services," | : | |
| and | : | |
| MARIO VACANTI, | : | |
| Defendants. | : | |

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Doc. 11)

This civil action is before the Court on Plaintiff's motion for default judgment. (Doc. 11). Defendants did not respond.

## I. BACKGROUND

Plaintiff Bennie Blevins ("Plaintiff") commenced this civil action against Defendants MSV Recovery LLC d/b/a "Upstate Services" ("Upstate") and Mario Vacanti ("Vacanti") (collectively "Defendants") pursuant to the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692 *et seq.*) and the Ohio Consumer Sales Practices Act ("OCSPA") (Ohio Rev. Code §§ 1345.01 *et seq.*). (*See* Doc. 1).

Plaintiff alleges that, in December 2018, Upstate, a debt collector, started calling Plaintiff, a natural person, at the direction of Vacanti, its owner, to collect upon a debt for

household goods (the "Debt").[1] (*Id.* at ¶¶ 8–12). Plaintiff asserts that, during its calls with Plaintiff, Upstate threatened to inform Plaintiff's employer about the Debt, threatened to garnish Plaintiff's wages, and threatened to prosecute Plaintiff for "check fraud." (*Id.* at ¶¶ 13–16). Plaintiff further asserts that, notwithstanding its threats, Upstate did not have the authority to disclose the Debt, did not have the ability to garnish his wages, and did not actually have any intention of suing Plaintiff over the Debt. (*Id.* at ¶¶ 16–18, 38 (alleging further that Upstate "never actually sues any consumers")). In addition to the foregoing, Plaintiff claims that Upstate never informed Plaintiff of its real name or provided Plaintiff with a "1692g" notice.[2] (*Id.* at ¶¶ 19, 31).

Based upon these allegations, Plaintiff contends that Defendants have violated FDCPA §§ 1692e–f (which prohibit a debt collector from using false, deceptive, misleading, unfair, or unconscionable means to collect a debt), § 1692d(6) (which prohibits a debt collector from placing calls without meaningfully disclosing its identity), and § 1692g (which requires a debt collector to send a consumer a notice of debt after an initial communication). (Doc. 1 at ¶ 38). Plaintiff also contends that Defendants have violated OCSPA § 1345.02(A) (which prohibits the commission of an unfair or deceptive act or practice in connection with a consumer transaction). (*Id.* at ¶ 41). Plaintiff avers that he "has suffered anxiety, fear, confusion, aggravation, and deprivation of the ability

---

[1] Plaintiff asserts that "Vacanti personally oversees collection activities at Upstate, including by setting Upstate's collection policies and practices." (Doc. 1 at ¶ 8).

[2] Plaintiff asserts that his counsel only learned "Upstate's true legal name by a stroke of luck when a process server noticed a piece of mail at Upstate's office addressed to 'MSV Recovery LLC.'" (Doc. 11 at 2 (citing Doc. 1 at ¶¶ 19–31)).

to enforce his legal rights . . . ." (*Id.* at ¶ 32). As to relief, Plaintiff seeks statutory damages, actual damages, attorney fees, and costs. (*Id.* at 7).

Plaintiff filed his Complaint on April 16, 2019. (*See id.*). Defendants were served with copies of the summons and Complaint on April 23, 2019. (Docs. 5, 6). Pursuant to Fed. R. Civ. P. 12(a), Defendants were required to file and serve their answers no later than May 14, 2019. To date, no responsive pleading has been filed or served. On May 16, 2019, the Clerk properly entered defaults. (Docs. 9, 10). Subsequently, Plaintiff filed the instant motion for default judgment. (Doc. 11).

## II. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Rule 55(a) and the party's application for default under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-CV-298, 2010 WL 3341566, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

While liability may be shown by well-pleaded allegations, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 2:07-CV-14004, 2010 WL 2572713, at *4 (E.D. Mich. June 23, 2010) (citation omitted). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages."

3

*Mill's Pride, L.P. v. W.D. Miller Enterprises, LLC*, No. 2:07-CV-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010).

### III. ANALYSIS

Plaintiff moves for default judgment and an award of damages against Defendants under the FDCPA, 15 U.S.C. §§ 1692 *et seq.* and the OCSPA, Ohio Rev. Code §§ 1345.01 *et seq.* (*See generally* Doc. 11). Defendants having defaulted, the factual allegations in the Complaint, except those related to the amount of damages, are deemed true. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995).

Upon review of the record, the undersigned finds that default judgment is warranted under the facts of this case. Initially, Defendants' failure to respond to the Complaint, applications for entry of default, or motion for default judgment has made it clear that Defendants have no intention of defending this action. Moreover, based upon the allegations in the Complaint, which the Court accepts as true, the Court finds that Defendants have violated both the FDCPA and the OCSPA by engaging in false, deceptive, and unfair collection practices.[3] *See* 15 U.S.C. §§ 1692d(6), 1692e(4), (5), (7), and (14), 1692f, 1692d; Ohio Rev. Code § 1345.02(A).

---

[3] To be clear, the Court finds that, because Vacanti "personally overs[aw]" Upstate's unlawful collection practices, Vacanti (as well as Upstate) is liable to Plaintiff under the FDCPA and the OCSPA. (Doc. 1 at ¶¶ 8, 39, 48); *see, e.g.*, *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 436 (6th Cir. 2008) (adopting the reasoning of a line of cases holding that where, as here, "a shareholder, officer, or employee of a corporation is personally involved in the debt collection at issue, he may be held personally liable [under the FDCPA] as a debt collector without piercing the corporate veil" (quoting *Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F. Supp. 2d 615, 618 (D. Utah 2005)); *Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1205 (E.D. Cal. 2013) ("Courts have found an owner or partner individually liable under the FDCPA based upon their supervisory control of debt collection employees.");

With liability established, the Court must determine the extent of damages. To ascertain a sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12-CV-962, 2012 WL 3579690, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Acosta v. Dreamlife Cmty., LLC*, No. 1:18-CV-492, 2019 WL 632434, at *2 (S.D. Ohio Feb. 14, 2019).

In this case, Plaintiff moves the Court to award him: (A) $1,000.00 in statutory damages under the FDCPA; (B) $200.00 in statutory damages under the OCSPA; (C) $15,100.00 in actual damages; (D) $6,504.15 in attorney fees; and (E) $505.93 in costs.[4] (Doc. 11 at 1).

---

*Hoffman v. GC Servs. Ltd. P'ship*, No. 3:08-CV-255, 2010 WL 9113645, at *8 (E.D. Tenn. Mar. 3, 2010) ("Supervisors may [] be held liable under the FDCPA for their indirect involvement in the collection of a 'debt' . . . ."); *see also Garber v. STS Concrete Co.*, 991 N.E.2d 1225, 1233 (Ohio Ct. App. 2013) ("Where officers or shareholders of a company take part in or direct the actions of others that constitute a violation of the [O]CSPA, that person may be held individually liable.").

[4] Plaintiff's instant motion actually seeks $6,610.08 in attorney fees and $400.00 in costs. (Doc. 11 at 1). However, on the Court's review, these amounts are not quite correct. Plaintiff's attorney fee total includes a $105.93 expense related to "service of process." (Doc. 11-4 at 3). This expense is more properly characterized as a cost. *See, e.g.*, *Thompson v. Rosenthal*, No. 2:14-CV-37, 2014 WL 7185313, at *5 (S.D. Ohio Dec. 16, 2014) (characterizing expenses related to service of process as costs), *report and recommendation adopted*, No. 2:14-CV-37, 2015 WL 235235 (S.D. Ohio Jan. 16, 2015). Accordingly, the Court will construe Plaintiff's instant motion as seeking $6,504.15 in attorney fees and $505.93 in costs.

### A. Statutory damages under the FDCPA

The FDCPA allows the Court to award up to $1,000.00 in statutory damages. 15 U.S.C. § 1692k(a)(2)(A). When considering what amount of statutory damages to award, a court should consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Id.* § 1692k(b)(1).

Here, Plaintiff requests $1,000.00 in statutory damages under the FDCPA. (Doc. 11 at 1). On the Court's review, Plaintiff's request should be granted. The uncontested allegations in Plaintiff's Complaint establish that Defendants have engaged in several purposeful violations of the FDCPA. (*See* Doc. 1). Under such circumstances, a $1,000.00 award of statutory damages is appropriate. *See, e.g.*, *Harding v. Check Processing, LLC*, No. 5:10-CV-2359, 2011 WL 1097642, at *3 (N.D. Ohio Mar. 22, 2011) (finding award of $1,000.00 appropriate for "several purposeful violations of [the] FDCPA").

### B. Statutory damages under the OCSPA

The OCSPA prohibits a supplier from "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). If a supplier commits a deceptive act after an Ohio state court has already concluded that the deceptive act violates § 1345.02, a consumer may recover three times its "actual economic damages or two hundred dollars, whichever is greater . . . ." *Id.* § 1345.09(B).

6

Here, Plaintiff requests $200.00 in statutory damages under the OCSPA. (Doc. 11 at 1). On the Court's review, Plaintiff's request should be granted. Based upon the uncontested allegations in Plaintiff's Complaint, Defendants have committed several acts which are "unfair or deceptive" under well-established Ohio state law. *See, e.g.*, *Bennett v. Tri-State Collection Serv.*, No. 940002, 1976 WL 38806, at *1 (Ohio Com. Pl. Aug. 24, 1976) (stating that a deceptive act exists under § 1345.02 where, as here, a creditor or collector "exaggerate[s] the remedies or power of the creditor or collector over the consumer"). As such, Plaintiff's requested award ($200.00) is appropriate.[5]

**C. Actual damages**

The FDCPA allows a consumer to recover "any actual damage sustained" as a result of a debt collector's failure to comply with the FDCPA. 15 U.S.C. § 1692k(a)(1). Actual damages may be awarded "to compensate for out-of-pocket expenses incurred." *Rainier v. Law Offices of John D. Clunk Co., L.P.A.*, No. 2:13-CV-1173, 2017 WL 9439263, at *11 (S.D. Ohio Sept. 22, 2017) (citation omitted). Actual damages may also be awarded to compensate "for emotional distress, humiliation, and embarrassment." *Dowling v. Litton Loan Servicing, LP*, No. 2:05-CV-98, 2006 WL 3498292, at *10 (S.D. Ohio Dec. 1, 2006).

---

[5] As Plaintiff has only asked for $200.00, the Court need not determine whether Defendants' conduct caused Plaintiff separate harms warranting multiple awards under the OCSPA. (*See* Doc. 11 at 1); *cf. Charvat v. NMP, LLC*, 656 F.3d 440, 452 (6th Cir. 2011) (concluding that a plaintiff was entitled to recover multiple $200.00 awards when multiple OCSPA violations caused separate/distinct harms).

A plaintiff may rely on his own testimony to establish emotional distress damages. *Leonard v. John Doe Corp.*, No. 2:19-CV-2142, 2020 WL 3642562, at *3 (S.D. Ohio July 6, 2020). However, the plaintiff must explain the circumstances of his injury in reasonable detail. *Id.*

Here, Plaintiff seeks $15,100.00 in actual damages. (Doc. 11 at 1). Plaintiff has submitted a signed declaration (the "Declaration") setting forth the basis for his actual damages claim. (Doc. 11-1). According to that Declaration (as well as Plaintiff's other filings), Plaintiff's actual damages claim consists of two parts: (1) a $100.00 claim for economic loss damages; and (2) a $15,000.00 claim for emotional distress damages. (*See id.*; *see also* Doc. 11 at 10–11). The Court will address the propriety of each type of actual damages in turn.

### 1. *Economic loss damages*

First, the Court considers Plaintiff's proposed economic loss damages. In his Declaration, Plaintiff asserts that, after Upstate started calling him to collect upon the Debt, Plaintiff grew fearful that Upstate would file a lawsuit against him. (Doc. 11-1 at ¶ 29). Plaintiff further asserts that, in an effort to avoid such a lawsuit, Plaintiff scheduled an appointment with a local attorney to discuss the possibility of declaring bankruptcy. (*Id.* at ¶¶ 29–30). Apparently, Plaintiff paid $100.00 for the consultation; however, Plaintiff never actually filed for bankruptcy. (*Id.* at ¶ 30). Plaintiff alleges that he should be able to recover the $100.00 he "wasted" on a bankruptcy consultation under the FDCPA. (Doc. 11 at 10).

8

On review, Plaintiff both attended the bankruptcy consultation and incurred the $100.00 fee as a direct result of Defendants' unlawful collection practices.  (Doc. 11-1 at ¶¶ 29–30).  As such, the Court concludes that the $100.00 fee constitutes just the type of "out-of-pocket" expense compensable as actual damages under the FDCPA.  *Rainier*, 2017 WL 9439263, at \*11.  Notably, other courts have countenanced the award of similar fees as actual damages under the FDCPA.  *See , e.g.*, *Beard v. Ocwen Loan Servicing, LLC*, No. 1:14-CV-1162, 2016 WL 4271765, at \*3 (M.D. Pa. Aug. 15, 2016) (stating that Congress intended "to permit the recovery of <u>all</u> attorney[] fees caused by FDCPA violations" (emphasis in original)); *Shepherd v. Law Offices of Cohen & Slamowitz, LLP*, 668 F. Supp. 2d 579, 580 (S.D.N.Y. 2009) (indicating that a variety of fees incurred as a result of a debt collector's wrongful practices are compensable as "actual damages" under the FDCPA).  Plaintiff is thus entitled to the full $100.00 requested.

### 2. *Emotional distress damages*

Next, the Court turns to Plaintiff's proposed emotional distress damages.  In his Declaration, Plaintiff asserts that, after Upstate started calling him to collect upon the Debt, Plaintiff experienced bouts of panic, difficultly falling asleep, trouble focusing at work, and "flashbacks" to past instances of verbal/physical abuse.  (Doc. 11-1 at ¶¶ 25–27; *see* Doc. 11 at 11).  Plaintiff further asserts that, in order manage his elevated anxiety, Plaintiff increased the dosage of an anti-anxiety medication he took on an "as-needed"

basis from 50 to 100mg per day.[6] (Doc. 11-1 at ¶ 28). Plaintiff alleges that the emotional distress he experienced warrants a $15,000.00 award under the FDCPA. (Doc. 11 at 10–11).

On review, the Court has no doubt that Plaintiff experienced emotional distress as a result of Defendants' unlawful collection tactics. As a result, the Court concludes that emotional distress damages are appropriate in this case. Nevertheless, Plaintiff's requested award ($15,000.00) is out of step with awards issued in analogous decisions. *See, e.g.*, *Willis v. First Capital Recovery, Inc.*, No. 4:14-CV-14941, 2015 WL 3949453, at *3 (E.D. Mich. June 29, 2015) (awarding $5,000.00 to FDCPA plaintiff who averred that the stress caused by defendant's conduct was so severe as to cause high blood pressure); *Harding*, 2011 WL 1097642, at *2 (awarding $5,000.00 to FDCPA plaintiff who averred that the stress caused by defendant's conduct was so severe as to worsen a preexisting heart condition). Upon a careful review of the evidence submitted, the Court concludes that a $5,000.00 award will adequately compensate Plaintiff for the emotional distress he has suffered.

### 3. *Total actual damages*

Summing the economic loss ($100.00) and emotional distress damages ($5,000.00) discussed *supra*, the Court concludes that it is appropriate to award Plaintiff a total of $5,100.00 in actual damages under the FDCPA.

---

[6] To be clear, according to the Declaration submitted, Plaintiff took the anti-anxiety medication on an as-needed basis both before and after Upstate began calling him. (Doc. 11-1 at ¶ 28). However, Plaintiff increased his usage of the anti-anxiety medication after speaking with Upstate. (*Id.*)

### D. Attorney fees

The FDCPA mandates the award of a "reasonable attorney's fee" to a prevailing party. *See* 15 U.S.C. § 1692k(a)(3); *Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997). The OCSPA also provides for the award of attorney fees where, as here, the defendant "has knowingly committed an act or practice that violates this chapter." Ohio Rev. Code § 1345.09(F).

District courts use the lodestar method to determine an award of reasonable attorney fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar amount is "calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433).

Here, Plaintiff seeks a total of $6,504.15 in attorney fees. (Doc. 11 at 1; *see also* n.4, *supra*). Plaintiff's counsel has submitted a declaration complete with billing entries, in support of Plaintiff's request, which provides that the following individuals worked the following hours/rates on Plaintiff's case:

| Individual | Title | Hours | Rate | Total Bill |
|---|---|---|---|---|
| Mr. Hilton | Attorney | 11.54 | $275.00 | $3,173.50 |
| Mr. Parker | Attorney | 0.61 | $275.00 | $167.75 |
| Mr. Harvey | Summer Associate | 24.33 | $130.00 | $3,162.90 |
|  |  | **36.48** |  | **$6,504.15** |

11

(*See* Doc. 11-4; *see also* Doc. 11-3). The Court will consider the reasonability of both the hours worked and the rates proposed in turn.

### 1. *The hours worked*

In determining whether the number of hours expended on a case is reasonable, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). "The documentation offered in support of the hours charged must be of sufficient detail to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of such litigation." *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 913 (N.D. Ohio 2010), *aff'd in part, rev'd in part*, 499 F. App'x 538 (6th Cir. 2012) (citing *United Slate Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502, n.2 (6th Cir. 1984)).

Here, Plaintiff's counsel expended a total of 36.48 hours on Plaintiff's case. (Doc. 11-4). Of that total, 12.15 hours are attributable to Messrs. Hilton and Parker (experienced attorneys), and 24.33 hours are attributable to Mr. Harvey (a summer associate). (*Id.*) On review, the hours expended are reasonable. As an initial matter, this Court has previously approved hourly totals similar to those requested here in analogous cases. *See, e.g.*, *Miller v. Ability Recovery Servs., LLC.*, No. 1:18-CV-266, 2019 WL 1227777, at *5 (S.D. Ohio Mar. 15, 2019) (concluding that it was reasonable to expend 36.26 on an FDCPA case resolved at the default judgment stage). Moreover, the Court

has carefully reviewed the billing entries submitted. And, upon its careful review, the Court concludes that a reasonable attorney would find the work described therein reasonably necessary to facilitate the successful prosecution of Plaintiff's case.

### 2. *The rates proposed*

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring,* 36 F.3d 517, 533 (6th Cir. 1994), *cert. denied,* 514 U.S. 1127 (1995). "A reasonable fee is one that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). To determine a reasonable hourly rate, a useful guideline is the prevailing market rate in the relevant community, defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command." *Id.* at 447 (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)).

Here, Plaintiff asks the Court to compensate Mr. Hilton at a rate of $275.00/hour, Mr. Parker at a rate of $275.00/hour, and Mr. Harvey at a rate of $130.00/hour. (Doc. 11-4). As of the filing of the instant motion, Messrs. Hilton and Parker were experienced attorneys, and Mr. Harvey was a summer associate. (Doc. 11-3 at ¶¶ 1, 11, 13). On review, the rates proposed are reasonable. As an initial matter, courts in this district have previously awarded Plaintiff's counsel attorney fees at hourly rates comparable to those requested here. *See, e.g.*, *Leonard*, 2020 WL 3642562, at *3 (awarding Plaintiff's

13

counsel $270.00/hour for an experienced attorney and $130.00/hour for a summer associate in an FDCPA action). Additionally, on the Court's review, Plaintiff's counsel has provided Plaintiff with skilled and effective representation. Such representation indicates the hourly rate requested here is appropriate.

### 3. *Total fee award*

As both the hours worked and the rates proposed are reasonable, the Court concludes that Plaintiff is entitled to the full amount of attorney fees requested—$6,504.15. *Accord Imwalle*, 515 F.3d at 552.

### E. Costs

Finally, the FDCPA permits a prevailing plaintiff to recover costs. *See* 15 U.S.C. § 1692k(a)(3). Here, Plaintiff seeks costs totaling $505.93. (Doc. 11 at 1; *see also* n.4, *supra*). This total includes $400.00 in filing fees and $105.93 in "service of process" expenses. (*See id.*). On review, the Court concludes that the costs sought by Plaintiff are reasonable, and, as such, the Court will award the full amount requested. *Accord Brown v. Halsted Fin. Servs., LLC*, No. 3:12-CV-308, 2013 WL 693168, at *3 (S.D. Ohio Feb. 26, 2013) (awarding filing fee as costs); *see also Thompson*, 2014 WL 7185313, at *5 (awarding service of process expenses as costs).

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for default judgment (Doc. 11) is **GRANTED in part and DENIED in part**. Specifically:

1. Plaintiff is **GRANTED** default judgment against Defendants Upstate and Vacanti;

14

2. The Clerk **SHALL** enter Judgment in favor of Plaintiff and against Defendants Upstate and Vacanti, jointly and severally, in the amount of $13,310.08, representing:

   a. $1,000.00 in statutory damages under the FDCPA,

   b. $200.00 in statutory damages under the OCSPA,

   c. $5,100.00 in actual damages,

   d. $6,504.15 in attorney fees, and

   e. $505.93 in costs; and

3. This civil action is **TERMINATED** on the docket of this Court upon entry of Judgment.

**IT IS SO ORDERED.**

Date: 7/29/2020

*Timothy S. Black*
Timothy S. Black
United States District Judge